No. 23-1352

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

DOCKET NO. 23-1352

MINDY HILL
            Petitioner
V.
FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES OF AMERICA
                                                    Respondents

## PETITON FOR REHEARING

Pursuant to Fed R. App. P 4, petitioner, Mindy Hill an American journalist, hereby respectfully petitions for rehearing of the above case caption asserts the case involves questions of exceptional importance.

I.      What constitutes as a violation of the Communications Act? If the Communication Video Accessibility Act was signed into law, and agency is charged with regulating the Communications Act.  What is the statute of limitations for a violation of the Communications Act? Why didn't the FCC have the authority to bring forth an enforceable action against Google Inc., et al, and Google, LLC YouTube, LLC at the time initial complaint was filed December 2016?

II.     How did the FCC respond to violations of the Communications Act regarding closed captioning complaints pertaining or in relation to the multinational corporation and search engine in December 2016 through Feb 2017?

III.     What portion of the wireless bandwidth for spectrum provisions have been allocated to closed-captioning which is regulated by the FCC?

Filed on February 2, 2024, US Court of Appeals for the fourth circuit dismissed the petition for review of the Federal Communications Commission's (FCC) January 9, 2017 informal complaint online submission with regards to allegations of a "simple technical glitch" closed captioning; see Hill v. Google, Inc., et al.  Petition for judicial review of FCC order must be filed within 60 days; *see also Cellular*

2

*Telecom v. FCC, 330 F.3d 502, 508 (D.C. Cir. 2003)* finding 60-day statutory deadline jurisdictional). Petitioner did not apply for or promote any expansion of wireless networks for improved cellular towers or wireless communication facilities using antennas. This aligns with the *"Affordable Connectivity Program"* or broadband application submissions. At the time petitioner sent initial complaint to the FCC on or around December 10, 2016, the FCC specified they did not have the jurisdiction to bring any notice to Google's YouTube for the alleged "simple technical glitch" closed captioning by alleging violation of the Communications Act, defamation, and libel. There was no mandate in this case, but in determining mandate of 47 USC § 151 et seq. court of Appeals must focus on language of Communications Act itself.

Petitioner, followed up with the FCC regarding an initial December 2016 complaint on January 9, 2017 to learn if Commission had gained the authority function to enforce action against the communications and search Engine Company. Petitioner has no knowledge if Google Inc. et al has filed any license agreements for its wireless communication services with the FCC, but the agency did inform petitioner they did not have jurisdiction to bring forth enforceable action to remove the "simple technical glitch" which is a violation of the Communications Act. The court of appeals has jurisdiction over international telephone carrier's petition for review of FCC order conditionally granting plaintiff authorization to provide international telephone service between US & Guyana, and exhaustion of administrative remedies is not required before seeking judicial review since plaintiff was not applying for station license or constructing towers; *see Atlantic Tele-Network v. FCC, 59 F. 3d 1384, 313 US App. DC. 396 (DC Cir. 1995). 47 USCS § 208 (3) any order concluding an investigation under (1) (2) shall be a final order and may be appealed under § 402 (a). Complaints to the Commissions shall briefly state the facts, whereupon a statement of the complaint is made.* The US does not follow the common law fiction that all laws are enacted on the 1st day of legislative session; *see Alabama. Turinspeed v. Jones, 101, Ala., 593, 14 so. 377 (1893). Legislative Applicability 33:5 Statues fixing a future effective date,* US, a law applies only as if it's effective date where it states an effective date and is silent about retroactivity; *see Allin v. Brown, 6 Vet., App. 207 (1994). 34:5, Utah.* When a nation ceases to exist its treaties no longer have any force nor effect. An expiration date for a statue relating to liability for use of human blood,

organs or tissues does not make the law special legislation as legislator presumably hoped that a reliable

test might be devised by the expiration date; *see Bingham v. Lutheran General and Deaconess Hospital, 34*

*111. App. 3d 562, 340 N.E. 2d 220 (1st Dist. 1975)*

The FCC has "broad authority to oversee wire and radio communication in the United States"

*and must promote "effective use of radio in the public interest," see Cello Partnership v. FCC, 700 F. 3d*

*534, 537, 542 (D.C. Cir. 2012); see also 47 U.S.C. §§ 151, 303. To effectively assign frequency bands, the*

*FCC "must predict the effect and growth rate of technological newcomers on the spectrum, while striking a*

*balance between protecting valuable existing uses and making room for these sweeping new technologies."*

*Teledesic LLC v. FCC, 275 F. 3d 75, 84 (D.C. Cir. 2001). When the FCC "is fostering innovative methods*

*of exploiting the spectrum, it functions as a policymaker and is accorded the greatest deference by a*

*reviewing court." Mobile Relay Associates v. FCC, 457 F. 3d 1, 8 (D.C. Cir 2006).*

On June 28, 2010 Presidential Memorandum: Unleashing the Wireless Broadband Revolution, in

order to achieve mobile wireless broadband's full potential, we need an environment where innovation

thrives, and where new capabilities also secure, trustworthy, and provide appropriate safeguards for users'

privacy. *§ 1, The Secretary of Commerce, working through the National Telecommunications and*

*Information Administration (NTIA), shall: (a) (b), § 4, the FCC is strongly encouraged to work closely with*

*the Department of Commerce through NTIA.* On June 14, 2013, Executive departments and agencies did

an excellent job of pursing the twin goals of advancing their agency missions and promoting innovation

and economic growth. *§ 1 (b) the Spectrum Policy Team shall publish a report describing how FCC is*

*incorporating spectrum sharing into their spectrum management practices. § 5, Performance Criteria for*

*Radio Receivers. The FCC is strongly encouraged to develop to the fullest extent of its legal authority a*

*program of performance criteria, ratings, and other measures, including standards, to encourage the*

*design, manufacture, and sale of radio receivers. § 7, (a-f).* October 25, 2018, Developing a Sustainable

Spectrum Strategy for America's Future, and as the National Security Strategy of 2017 made clear, access

to spectrum is a critical component of the technological capabilities that enable economic activity and

protect national security. *§ 3, the FCC shall submit to the President through the Director of the National*

*Economic Council a report on the status of existing efforts and planned near to mid-term spectrum repurposing initiatives. § 5.*

On November 13, 2023, Modernizing United States Spectrum Policy and Establishing a National Spectrum Strategy an in order to meet the growing requirements of the United States radio frequency spectrum users, it is hereby ordered as follows: *Congress has charged NTIA and the Federal Communications Commission (FCC) with jointly managing the Nation's radio spectrum resources. § 5 a iii, iv, v, vi (b). § 6 a iii, b. § 7 (a) (i). § 9 Revocation, October 25, 2018, "Developing a Sustainable Spectrum Strategy for America's Future."*

Petitioner has recognized a pattern in the informal complaint filed with the FCC on or around December 10, 2016. Through the passage of time, it's the gift that keeps on giving to many courts, and courts of appeals being reviewed by more than 11 judges, while building and providing framework for various agencies, establishing new entities with the algorithms of strategically clouding the judgment of the courts. The complaint turned into a case caption because Congress didn't find it to be of any concern despite Senator Markey on July 26, 2010 expressing being able to communicate through touch not like Helen Keller palm touch but bringing his iPad on the floor presenting a need for touching the iPad to communicate, followed-up by Federal Communications Communication lack of jurisdiction allegations. Furthermore, jurisdiction became the dismissal argument presented by Google, Inc. YouTube, Inc., until scheduled for track mediation in 2018. Usually statues are commissioned before being erected in different geographical locations throughout the United States with various specifications for design and building material, and size. The Statue of Liberty doesn't have any limitation for its existence unless France decides to reclaim the gift it bestowed upon thee. The Emancipation statue, dedicated on April 14, 1876 did present some adverse feelings demonstrated during days of Black Lives Matter protest against injustice of police brutality in hopes that it would be removed. ₁Even Congresswoman Eleanor Holmes Norton expressed sentiment about the statue by introducing a bill to have it relocated. Furthermore, ² the statue of Albert Pike authorized by Congress in 1898, was removed during Black Lives Matter protest and uproar in the District of Columbia. Not sure who authorized its removal but it was done outside of its Congressional

5

authorization. Statutes can be viewed as coordinating mechanisms for collective plans. [3]Legislatures have the authority to declare in a statue itself the time when or circumstances under which, the law shall cease to operate, just as they have the power to declare when a new law shall take effect.

1.  June 23, 2020, Norton Introduces Legislation to Remove Emancipation Statue from Lincoln Park. Press Release, Norton.House.gov.
2.  Nov. 18, 2020, *Rollcall* Toppled, Warehoused, waiting. Confederate statue still in limbo in DC five months later, Albert Pike is now Congress' problem.
3.  Kanas. Cunningham v. Smith, 143 Kan. 267, 53 P.2d 870 (1936).

A charter gives permission for certain municipalities to function or carry out described by-laws. Moreover, a bill such as B22-1037 "Office on Deaf and Hard of Hearing Establishment Amendment Act of 2018," becomes law through various stages and witness testimonies then deemed necessary for taxpayers to foot the bill. The provisions in such bills are not finalized and often developed through departments and designated to *"task force groups"* to fulfill obligations for operational purposes. When a matter is brought before the court of law it can be a civil matter or criminal matter and statutes of filing and pleading varies. However, once a criminal that can follow your record. And if petitioner would have been found to give any information that was untrue while under oath with Google Inc. et al the civil matter could have turned into a different case caption with no statute of limitations on interpretation.

Petitioner firmly believes and asserts that when and if a civil action branch matter is filed with the courts in relation to an injustice then there is no expiration date on justice. If there was an expiration date on injustice then there would be no need for civil rights organizations such as the National Action Network. There wouldn't be a need for the organization to mobilize thousands to march for Jobs, Justice, and Equality or host 21st century Policing at the White House on September 6, 2026. Not to mention, there would not be any use or need for the NAACP or for legal counsel of Google, Inc. et al to use a tweet including the organization while under oath.

IV.     On June 28, 10 Unleashing the Wireless Broadband Revolution §3, DOJ should implement a plan to facilitate research development, experimentation, and testing by

researchers to explore innovative spectrum-sharing technologies including those that are secure and resilient.  If the Department of Justice prides itself on protecting consumers from harm or mistreatment, and typically reviews civil action matters that are brought forth to the court, then brings forth action against the multinational communications search engine for anti-trust allegations, did DC Attorney General's Office in good faith have a duty or obligation to extend equal protection under the law and safeguard petitioner since complaint was consumer related and did impact and affect her small boutique digital production company?

Despite the complaint filed with the FCC on December 10, 2016 and agency not having any enforceable action, DC Attorney General Karl Racine filed a petition for emergency observation and diagnosis on or around April 7, 2019 during the time petitioner wanted to proceed on an appeal with the original record.  Upon requesting transcripts later resulted in DC Attorney General Office getting involved but not from consumer protection statute nor context but was treated as a criminal.  However, AG Racine joined antitrust investigation to determine how Google's practices impact consumers and other business, and planned to objectively follow the facts wherever they lead.  AG Racine was also concerned about Google's potential monopolistic behavior.  Furthermore, legal counsel for Multinational Corporation was also affiliated with US Department of Justice under the Obama Administration.

Considering this case isn't a hypothetically but an actual occurrence, the last exceptional question for this court is how can a limited liability entity arise out of all the court proceedings, but not one court can consider who should be held accountable for the "simple technical glitch" violation of the Communications Act?

FILED: February 2, 2024

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 23-1352

———————————

MINDY HILL

     Petitioner

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES OF
AMERICA

     Respondents

———————————

J U D G M E N T

———————————

In accordance with the decision of this court, the petition for review is
dismissed.

This judgment shall take effect upon issuance of this court's mandate in
accordance with Fed. R. App. P. 41.

/s/ NWAMAKA ANOWI, CLERK

PER CURIAM:

On April 3, 2023, Mindy Hill filed a petition for review of the Federal Communications Commission's (FCC) January 9, 2017, email closing her informal complaint. To the extent this is an order subject to review in this court, the request for review was untimely filed over six years after the filing deadline. *See* 28 U.S.C. § 2344 (stating petition for judicial review of FCC order must be filed within 60 days); *see also Cellular Telecomm'n v. FCC,* 330 F.3d 502, 508 (D.C. Cir. 2003) (finding 60-day statutory deadline jurisdictional). As such, we dismiss the appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*DISMISSED*

## Certificate of Compliance with Type-Volume Limit

This document contains 2208 words, and complies with type-style.

Mindy Jo Hill, Pro Se

February 23, 2024

8

## Declaration

Pursuant to 28 U.S.C § 1746, I affirm under penalty of perjury under United States laws that the foregoing is true and correct. Executed on February 23, 2024.

Mindy Hill, Pro Se

9

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

DOCKET NO. 23-1352

MINDY HILL
       Petitioner
V.
FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES OF AMERICA
                                                  Respondents

# Notice of Appeal

Mindy Hill appeal to the United States Court of Appeals for the Fourth Circuit from the final judgment entered on February 2, 2024.

Mindy Hill, Pro Se - Petitioner
609 D Cherry Crest Road
Baltimore, MD 21225
Miraculous.hill09@gmail.com

Federal Communications Commission - Respondents
Office of General Counsel
c/o: Pam Smith
45 L Street, NE
Washington, DC 20054
202.418.1700

Greetings Clerk of Court,    2/23/24

I have enclosed a
extra copy for FILE
stamp & returned to me.

Thank you.

Mindy Hill

(Money Order for processing inside
this envelope)

MINDY HILL
609 D. CHERRY CREST RD
BALTIMORE, MD 21225

RECEIVED
U.S. MARSHA

Lewis F. Powell Jr. Courthou
c/o: Clerk of Court
1100 East Main Street,
Richmond, VA 23219



| | |
|---|---|
| **P** | **UNITED STATES POSTAL SERVICE** *Retail* |

| **US POSTAGE PAID** | |
|---|---|
| **$7.46** | Origin: 21230<br>02/23/24<br>2304260033-09 |

**PRIORITY MAIL®**

0 Lb 4.40 Oz
**RDC 03**

EXPECTED DELIVERY DAY: 02/26/24

C003

SHIP
TO:

STE 501
1100 E MAIN ST
RICHMOND VA 23219-3538

**USPS TRACKING® #**



9505 5114 2311 4054 5846 36

